# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NATURAL RESOURCES
DEFENSE COUNCIL, INC.; and

NATIONAL WILDLIFE
FEDERATION,

     Plaintiffs,

v.

ENVIRONMENTAL
PROTECTION AGENCY; et al.,

     Defendants.

Case No. 18-cv-1048(JPO)

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO PROPOSED INTERVENORS' MOTION TO TRANSFER

## INTRODUCTION

Plaintiffs challenge a rulemaking by the Environmental Protection Agency and the Army Corps of Engineers (together, the Agencies) that suspends for two years a rule issued in 2015 called the Clean Water Rule. 83 Fed. Reg. 5,200 (Feb. 6, 2018) (Suspension Rule). A group of industry trade associations (the Industry Groups) seeks to intervene, presumably to argue that the Suspension Rule is lawful. Instead of filing a proposed pleading with their motion, however (as required by Federal Rule of Civil Procedure 24(c)), the Industry Groups moved to transfer this case to the Southern District of Texas, where they are challenging the 2015 Clean Water Rule. *See* ECF No. 28 (Industry Mot.).

The Industry Groups are not yet parties to the case, so their transfer motion is premature. If the Court considers the motion, however, it should be denied. The Industry Groups make no legitimate argument for transfer. They adopt the arguments made in Defendants' transfer motion, *see* Industry Mot. 3, but those fail for the reasons given in Plaintiffs' opposition brief, *see* ECF No. 31 (hereafter, Plaintiffs' Opp.).

The Industry Groups' other two arguments also fail. First, they claim transfer is necessary to prevent Plaintiffs from taking supposedly "inconsistent positions" in the Texas court and in this Court. But the Industry Groups misrepresent Plaintiffs' position in the Texas litigation. Second, they repeat Defendants' claim that transfer would produce efficiencies, but as Plaintiffs have explained, that argument is meritless: This case and the Texas case involve different claims about different rulemakings involving different records. There is no risk of inconsistent judgments, and there is no efficiency to be gained by adding this case to the Texas court's docket.

1

## BACKGROUND

To avoid duplicative briefing, Plaintiffs incorporate by reference the Background section of their brief opposing Defendants' motion to transfer. Plaintiffs' Opp. 2-3. Most of the Industry Groups here are plaintiffs in a challenge to the Clean Water Rule pending in the Southern District of Texas. *Am. Farm Bureau Fed'n (AFBF) v. U.S. EPA*, No. 3:15-cv-165 (S.D. Tex.).

## ARGUMENT

### I.    The Industry Groups have not shown that venue would be proper in Texas

The Industry Groups make no attempt to satisfy the threshold requirement for transfer: showing that Plaintiffs' action could have been brought in the transferee district. *See* 28 U.S.C. § 1404(a); *Randle v. Alexander*, 960 F. Supp. 2d 457, 485 (S.D.N.Y. 2013). They simply refer to Defendants' opening brief. Industry Mot. 3. As Plaintiffs explained in opposition to Defendants' motion, however, Plaintiffs could not have filed this action in the Southern District of Texas. Plaintiffs do not reside in Texas, Defendants do not reside in Texas, and "the events or omissions giving rise to the claim" did not occur in Texas. *See* 28 U.S.C. § 1391(e); Plaintiffs' Opp. 5-9. For this reason alone, the Industry Groups' transfer motion must be denied.

### II.    The Industry Groups' accusations of inconsistency are meritless

The Industry Groups' primary argument in favor of transfer is a rhetorically provocative but false claim that Plaintiffs are "double-dealing" in this Court and the Texas court. Industry Mot. 1, 6-7, 9. In fact, Plaintiffs' positions are entirely consistent. The Suspension Rule is now in effect, so preliminary injunctive relief from the Clean

Water Rule—which is suspended—is unwarranted. However, the Suspension Rule

ought to be vacated, because it is unlawful. If and when it is vacated, any party claiming

harm from the Clean Water Rule may renew a request for preliminary relief. Plaintiffs

said to the Texas court:

> Intervenors challenged the suspension in court on February 6, 2018. No.
> 1:18-cv-1048 (S.D.N.Y.). If that challenge were to be successful, and a court
> were to vacate the suspension, that would be the appropriate time for
> Plaintiffs [*i.e.*, the Industry Groups and Texas State plaintiffs] to raise their
> claims of harm from the [Clean Water Rule]. But while the rule is
> suspended, it does not and is not "likely" to cause any "irreparable harm"
> necessary to justify a preliminary injunction.

Def.-Intervenors' Opp'n to Pls.' Mots. for a Prelim. Inj. at 12, ECF No. 66, *AFBF v. U.S.*

*EPA*, No. 3:15-cv-165 (S.D. Tex. Feb. 14, 2018) (attached here as Exhibit A). Plaintiffs

never said the Suspension Rule was "valid" or "good law." Industry Mot. 1, 6. They

simply noted—accurately—that it is *in effect*, and will remain in effect unless and until

this Court (or another court) vacates it. That is not "double-dealing." Noticeably absent

from the Industry Groups' brief is any quotation from Plaintiffs' brief in the Texas court.

That is because nothing in that brief is inconsistent with Plaintiffs' position here.

The Industry Groups' accusation that Plaintiffs engaged in "forum shopping" by

filing in New York, Industry Mot. 9, is similarly baseless. Lead Plaintiff Natural

Resources Defense Council (NRDC) is headquartered in this District, making it a

manifestly convenient and legitimate choice. Plaintiffs' Opp. 10; *Novo Nordisk of N. Am.,*

*Inc. v. Genentech, Inc.*, 874 F. Supp. 630, 633 (S.D.N.Y. 1995) (rejecting accusation of

forum shopping where "plaintiff's principal place of business is in the Southern District

of New York"). It would have made no sense for NRDC, headquartered in New York,

3

and National Wildlife Federation, headquartered in Virginia, to travel halfway across the country to try to file this challenge in the Southern District of Texas—even putting aside the fact that venue would have been improper there, *see* Plaintiffs' Opp. 5-9.

### III.   The Industry Groups have not shown that any consideration favors transfer

The Industry Groups argue that the "interests of justice" favor transferring this case to promote judicial economy. Industry Mot. 4-6. But sending this case to Texas will not promote judicial economy: This case and the Texas cases involve distinct claims for relief about distinct rules, issued nearly three years apart, that were based on distinct administrative records. *See* Plaintiffs' Opp. 14-15 (comparing claims at issue). There is no discovery in common nor any common witnesses, because this is a record review case. The Texas court has never been presented with the legal claims at issue here—regarding the legality of the Suspension Rule—nor will that court ever have cause to decide such questions, absent transfer. Transfer is unwarranted.

The many case citations given by the Industry Groups, Industry Mot. 4-5, are irrelevant. Unlike the cited cases, this is not a situation in which "precisely the same issues" are pending in different courts. *See id.* at 4 (quoting *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960) (involving two actions about precisely the same thing—liability and damages for the sinking of a single barge)). The Industry Groups cite cases that arose from "a single transaction," *Dahl v. HEM Pharm. Corp.*, 867 F. Supp. 194, 196 (S.D.N.Y. 1994), or raised "virtually identical" legal issues, *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 131 (E.D.N.Y. 2004), neither of which is true here. *See Jones v. Smith*, 784 F.2d 149, 150-51 (2d Cir. 1986) (involving four cases

challenging a single directive); *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 617, 619-20 (2d
Cir. 1968) (involving multiple cases alleging the same basic claims of fraud,
misrepresentation, and manipulation of the market price of a certain stock); *JetBlue
Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 401 (E.D.N.Y. 2013)
(involving six cases adjudicating the validity of the same patents); *APA Excelsior III L.P.
v. Premiere Techs., Inc.*, 49 F. Supp. 2d 664, 669-70 (S.D.N.Y. 1999) (involving two cases
that "hinge[d] on the same core of operative facts" and presented a "variety of identical
legal issues"). Or the cited cases involved substantially overlapping factual evidence,
witnesses, and discovery—also not at issue here. *See Wald v. Bank of Am. Corp.*, 856 F.
Supp. 2d 545, 548, 550-51 (E.D.N.Y. 2012). The Industry Groups make no real attempt to
explain why these cases are pertinent. *See* Industry Mot. 5.

The Industry Groups cite not a single case granting transfer where, as here, the
two cases arose out of different operative facts, raise different legal claims, challenge
agency decisions based on separate administrative records, and involve no foreseeable
prospect of discovery or trial. As the Northern District of California recently held in
similar circumstances, that two cases share a common "subject matter" is "hardly
grounds for transfer." *California v. Bureau of Land Mgmt.*, --- F. Supp. 3d ----, Nos. 17-cv-
7186, -7187, 2018 WL 1014644, at *4 (N.D. Cal. Feb. 22, 2018).

Although the Industry Groups argue that this case "implicates many of the same
questions" as the Texas case, Industry Mot. 6, they fail to identify a single overlapping
question. The most they can do is to suggest that Plaintiffs' "theory of harm" in this case
is that the suspension of the Clean Water Rule injures them, and that understanding this

5

"theory of harm" requires "a detailed evaluation and understanding" of the Clean Water Rule. *Id.* That is not the case. The preamble to the Clean Water Rule states that the rule is "environmentally more protective" than the previous regulatory regime, 80 Fed. Reg. 37,054, 37,057 (June 29, 2015), and no "detailed evaluation" of the Clean Water Rule is necessary to assess Plaintiffs' standing.

Additionally, even if evaluating Plaintiffs' standing requires familiarity with how the Clean Water Rule protects water bodies that benefit Plaintiffs' members, that is not the type of familiarity with the rule that the Texas court will acquire. That court will need to understand the aspects of the Clean Water Rule that are relevant to the legal claims advanced by the plaintiffs there. For instance, whether the Clean Water Rule better protects water bodies that Plaintiffs' members use is a separate question from whether the rule violates the Commerce Clause, or was a "logical outgrowth" of the proposed version of the rule. *See* Compl. ¶¶ 80, 84, ECF No. 1, *AFBF v. U.S. EPA*, No. 3:15-cv-165 (S.D. Tex. July 2, 2015). Describing both analyses as "understanding" the Clean Water Rule, Industry Mot. 6, obscures the dissimilarity between the two endeavors.

The Industry Groups, like Defendants, also raise the specter of inconsistent judgments, but the example they give is not an example of inconsistent judgments. They assert that the Texas court could enjoin the Clean Water Rule and this Court could vacate the Suspension Rule. Industry Mot. 8. That is true, but there is nothing inconsistent about those judgments, which could just as easily be rendered by a single

court.[1] Although the Industry Groups argue that a judgment enjoining the Clean Water Rule and one vacating the Suspension Rule would create "deep uncertainty," Industry Mot. 8, they do not explain what they mean by that. If the Suspension Rule is vacated and the Clean Water Rule is also enjoined, then the pre-Clean Water Rule regulations would be operative. That is not "deep uncertainty."[2]

As Plaintiffs explained in their opposition to Defendants' transfer motion, this Court and the Texas court are equally capable of applying the federal law at issue here. *See* Plaintiffs' Opp. 14; *cf. Duro Textiles, LLC v. Ricci*, No. 14-cv-705, 2014 WL 641443, at *3 (S.D.N.Y. Feb. 18, 2014) (considering, in favor of transfer to Massachusetts, the fact that the case would involve application of Massachusetts state law). Although the Industry Groups argue briefly that the "familiarity with governing law" factor favors

---

[1] Any suggestion that vacatur of the Suspension Rule requires finding that the Clean Water Rule "*should* come into effect," Industry Mot. 8, is wrong. Plaintiffs challenge the Suspension Rule only, and do not seek any consideration here of the merits of the Clean Water Rule. If the Suspension Rule is vacated, the Clean Water Rule will take effect automatically, as the preexisting regulation. *See Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (court vacatur reinstates the rule previously in force). Likewise, if the Texas court were to vacate the Clean Water Rule, the pre-Clean Water Rule regulations would take effect without the Texas court needing to adjudge the legality of those preexisting rules.

[2] The Industry Groups' argument that transfer should be granted to avoid "conflicting results," Industry Mot. 2, is also contrary to the position they took in 2015 when opposing the Agencies' motion to consolidate the Clean Water Rule challenges. There, the Industry Groups argued that a risk of "inconsistent legal determinations" was "a reason to *deny* transfer." Br. of AFBF et al. in Opp'n to the United States' Mot. for Transfer at 2, ECF No. 64, MDL No. 2663 (J.P.M.L. Aug. 19, 2015) (attached as Exhibit B); *id.* at 11 ("parallel proceedings are the norm in challenges to rule promulgations"). The Industry Groups attempt to fend off criticism by claiming that they "planned all along" to argue for a nationwide stay of the Clean Water Rule. Industry Mot. 8. But a stay of the rule during litigation does not alter the risk of inconsistent final judgments.

Texas, Industry Mot. 8-9, they do not cite cases on point, and instead revert to their claim that it would be "efficient" to litigate the Suspension Rule challenge in Texas, *id.* at 8. That argument fails for the reasons outlined above.

The Clean Water Rule cases have been inactive for much of the time they have been pending in the Texas court, contrary to the Industry Groups' several attempts to suggest that the litigation there has been lengthy and involved. *See* Industry Mot. 5, 7-8. In fact, little happened in any district court challenge to the Clean Water Rule after the Sixth Circuit stayed the rule nationwide in October 2015, and determined in February 2016 that the circuit court, and not the district courts, had jurisdiction to review those challenges. *In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804 (6th Cir. 2015); *In re EPA & Dep't of Def. Final Rule*, 817 F.3d 261, 274 (6th Cir. 2016), *rev'd and remanded sub nom. Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617 (2018). The Texas cases were administratively closed in February 2017, and only reopened last month. Orders, ECF Nos. 54 & 63, *AFBF v. U.S. EPA*, No. 3:15-cv-165 (S.D. Tex.) (attached here as Exhibit C and Exhibit D). During the relatively short time that the Texas cases were active, the court did not reach the merits of any claims. *See generally* Docket, *Texas v. U.S. EPA*, No. 3:15-cv-162 (S.D. Tex.); Docket, *AFBF v. U.S. EPA*, No. 3:15-cv-165 (S.D. Tex.). And, of course, none of the claims at issue here—regarding the Suspension Rule—has ever been before that court.

Finally, the Industry Groups argue that transfer would allow the Texas court to "resolve all of the related issues" in a single case. Industry Mot. 4. But as explained in Plaintiffs' opposition to Defendants' transfer motion, there are challenges to the Clean Water Rule itself that are pending *outside* the Southern District of Texas. *See* Plaintiffs'

Opp. 18-20.[3] Neither the Industry Groups nor Defendants have expressed any intention of seeking to consolidate those challenges in a "single case." Transferring this Suspension Rule challenge to only one of the courts considering the Clean Water Rule would do nothing to mitigate the risk of inconsistent rulings on the Clean Water Rule itself. *See* Plaintiffs' Opp. 20. All it would accomplish is to change the adjudication of this case from the Southern District of New York to the Southern District of Texas. Under the Industry Groups' own theory of "inconsistency," the Texas court could still come to a decision on the Suspension Rule challenge that is supposedly "inconsistent" with one of the *other* courts considering a Clean Water Rule challenge.

## CONCLUSION

For the foregoing reasons, the motion to transfer should be denied.

---

[3] There have been some developments in these cases since Plaintiffs filed their opposition to Defendants' transfer motion. The Southern District of Georgia, on March 9, denied the Agencies' motion for a one-year stay in that case, granting a more limited 30-day stay instead; the plaintiffs opposed the stay unless a preliminary injunction against the Clean Water Rule were to be granted first. *See* Order, ECF No. 144, and Resp. in Opp'n, ECF No. 140, *Georgia v. Pruitt*, No. 2:15-cv-79 (S.D. Ga.) (Order attached here as Exhibit E). Also on March 9, the Northern District of Oklahoma administratively closed the two cases before it. *Administrative Closing Order*, ECF No. 56, *Oklahoma v. U.S. EPA*, No. 4:15-cv-381 (N.D. Okla.) (attached here as Exhibit F); ECF No. 64, *Chamber of Commerce v. U.S. EPA*, No. 4:15-cv-386 (N.D. Okla.) (attached here as Exhibit G).

Dated: March 13, 2018                    Respectfully submitted,

                                         /s/ Catherine Marlantes Rahm
                                         Catherine Marlantes Rahm
                                         Natural Resources Defense Council
                                         40 West 20th Street
                                         New York, NY 10011
                                         Phone: (212) 727-4628
                                         E-mail: crahm@nrdc.org

                                         Jennifer A. Sorenson, admitted *pro hac vice*
                                         Natural Resources Defense Council
                                         111 Sutter Street, 21st Floor
                                         San Francisco, CA 94104
                                         Phone: (415) 875-6164
                                         E-mail: jsorenson@nrdc.org